848 F.2d 189
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Toby R. COMPTON and Hannelore Compton, Plaintiffs-Appellees,
v.
William DESKINS, individually and in his capacity as
supervisor and Sheriff of Pike County Board of Criminal
Justice, Burt Haitfield, Glen Francis, Blane Varney, Ervin
Trout, Clifford Station, Winfred Maynard, Robert Forsight,
individually and in his capacity as State Police for the
State of Kentucky, and Ed Shamaie, individually and in his
capacity as State Police for the State of Kentucky,
Defendants-Appellants.
 No. 87-5837.
 United States Court of Appeals, Sixth Circuit.
 May 26, 1988.
 
 Before MERRITT and CORNELIA G. KENNEDY, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendants, law enforcement officers, appeal the judgment of a United States Magistrate that denied their claim of qualified immunity in this 42 U.S.C. Sec. 1983 action. Because the record before the magistrate and before us is inadequate to determine the issue of qualified immunity, we AFFIRM.
 
 
 2
 The plaintiffs in this case operated a roller skating rink. At times, including the days at issue here, the rink was advertised and used as a dance hall. Plaintiffs' complaint alleged that various named and unnamed law enforcement officers engaged in a conspiracy to violate, and did violate, plaintiffs' constitutional rights in a series of incidents that included the arrest of plaintiff Toby Compton and three separate searches at the skating rink.
 
 
 3
 With the consent of the parties, the District Court referred this action to the United States Magistrate for "all further proceedings, including trial and entry of judgment," pursuant to 28 U.S.C. Sec. 636(c), Joint Appendix at 20. A magistrate's judgment under such a referral is directly appealable to this Court, 28 U.S.C. Sec. 636(c)(3).
 
 
 4
 The magistrate found that the arrest of plaintiff Toby Compton was made pursuant to a facially valid warrant, and that defendants were therefore entitled to qualified immunity in their personal capacities with respect to the arrest, Baker v. McCollan, 443 U.S. 137 (1979); Harlow v. Fitzgerald, 457 U.S. 800 (1982). He also held that they were entitled to summary judgment on the merits of the arrest claim insofar as they were being sued in their official capacity because plaintiffs had failed to allege any official policy or custom, Monell v. New York City Dept. of Social Servs., 436 U.S. 658 (1978). Accordingly, the magistrate entered judgment for defendants in both their personal and official capacities on the false arrest claim. Plaintiffs do not appeal from these judgments.
 
 
 5
 The magistrate rejected defendants' claim of qualified immunity on all three search incidents, because he found that the acts alleged constituted violations of known constitutional rights. He granted defendants summary judgment, however, for these claims made against them in their official capacity because, again, plaintiffs had failed to allege that these acts were committed pursuant to any official policy or custom. Since plaintiffs do not appeal from this judgment either, the only issues before this Court concern the denial of qualified immunity in the action against defendants in their personal capacities for the three search incidents.
 
 
 6
 The first incident involved the entry of defendants Francis, Forsight (Forsythe) and Shamaie into the skating rink during business hours on the evening of February 17, 1984. A band had been hired and the rink was being operated as a dance hall that evening. The magistrate found, and we agree, that the mere entry of officers into the rink, when it was open to the public, does not constitute a search within the meaning of the Fourth Amendment, because "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection," Katz v. United States, 389 U.S. 347, 351 (1967). However, plaintiffs also alleged that defendant Shamaie[1] entered a non-public area of the skating rink, marked "employees only," and began searching through one of plaintiffs' garbage cans.
 
 
 7
 Defendants argue that this search was justified as one conducted at a place of entertainment, Ky.Rev.Stat.Ann., Sec. 231.010 (Baldwin 1986), et seq. That statute requires that persons conducting a public dance, as plaintiffs were, secure a permit, as plaintiffs apparently did. It also provides that peace officers shall visit places of entertainment regularly. A companion statute 70.160 provides that "The sheriff or his deputies shall at least once each month visit and inspect each public place in his county where music is furnished or permitted, or where public dancing is conducted or permitted." On the record before us we do not know whether Shamaie's search was made pursuant to this regulatory statute. Shamaie was a state police officer, not a sheriff or deputy sheriff. And although we have been cited to the regulatory statutes, we do not know the extent of the regulatory scheme of dance halls. It is even unclear where the garbage can was located. Plaintiffs' description of where it was located is ambiguous.
 
 
 8
 The second incident occurred later that night, when defendant Maynard and three unidentified officers entered the skating rink through its unlocked door after it was closed, armed with shotguns, purportedly to check on a report that someone had been shot there. Such a report could very well constitute exigent circumstances, justifying a warrantless entry, but, the present record does not warrant grant of immunity on this basis.
 
 
 9
 The only sources in the record for the story that a shooting had been reported are the deposition of Toby Compton, one of the plaintiffs, who testified at deposition that that is what the officers said at the time, and the deposition of former Deputy Sheriff Walter Petot, not one of the four officers involved. Petot testified in his deposition that after the incident he was told by the police dispatcher that she had received such a call from someone identifying himself as Toby Compton and dispatched officers to respond. While Petot's deposition states that the call was logged, and that he presumes the log is still in the possession of the sheriff's office, it does not appear that he ever saw this log, and it is not in evidence. The police dispatcher, so far as we can determine, has not been deposed in this case.
 
 
 10
 Defendant Maynard has not testified nor provided any affidavit as to his reason for entering the premises. The record is insufficient to establish that Maynard and the other officers were in fact dispatched to investigate the report of a shooting. Thus, there is a question of fact as to whether any of the defendants could have held an objectively reasonable belief that their actions were justified by such a report. Plaintiffs have alleged that all of these searches were part of a conspiracy among all of the defendants to deprive Toby Compton of his property by putting him out of business.
 
 
 11
 We also agree with the magistrate in rejecting defendants' argument, that although the skating rink was dark and the door closed, the door was not actually locked, and therefore the officers had a right to enter. The law is clear that without a regulatory purpose they did not have any such right absent exigent circumstances. Although defendants may yet show that there were exigent circumstances and that they therefore acted reasonably, they have not done so yet.
 
 
 12
 The third incident occurred the next day, when officers arrested Toby Compton. As mentioned, the arrest was pursuant to a facially valid warrant, and the magistrate's dismissal of all claims deriving from the arrest is not appealed. However, the magistrate found that the search of the skating rink at the time of the arrest, including a private office, was a violation of a clearly established constitutional right of which defendants should have known.
 
 
 13
 Defendants seek to portray this incident as a permissible search incident to arrest, citing United States v. Robinson, 414 U.S. 218 (1973). A search incident to a lawful arrest is limited however to the person of the arrestee and the area within the arrestee's control, id. at 224, Chimel v. California, 395 U.S. 752 (1969).[2] Plaintiffs have alleged, and introduced evidence that supports their allegation, that the search went far beyond the permissible scope of this limited exception to the warrant requirement.
 
 
 14
 Nor can this search be justified by reference to the "regulated industries" exception. There is simply no basis in the record for concluding that it was made pursuant to any regulatory or inspection scheme. Defendants cite United States v. Biswell, 406 U.S. 311 (1972), where the Court held that a warrantless inspection of a pawnbroker's locked storeroom was reasonable official conduct. But the search in Biswell was in furtherance of an elaborate federal statutory, regulatory and inspection scheme, not a random search to find evidence of crime. On the present record one cannot conclude that the search was a regulatory inspection. Even Donovan v. Dewey, 452 U.S. 594 (1981), which extended warrantless inspections of regulated industries to the nation's coal mines, would require that the warrantless search be for the regulatory purpose.
 
 
 15
 The magistrate's judgment was in the form of his partial granting of each sides' motion for summary judgment. Part of the magistrate's Memorandum Opinion and Order could be read to grant plaintiffs' motion for summary judgment on the issue of liability. We do not believe such a reading was intended by the magistrate. Rather we believe he meant that plaintiffs' complaint, if proven, would lead to a judgment against those defendants who committed the acts alleged, and that those defendants were not immune from liability.[3] Insofar as the magistrate's Memorandum Opinion and Order is understood to grant summary judgment to plaintiffs on the issue of liability, it is vacated and the case remanded for trial of the remaining issues of material fact, and for assessment of damages, if any.
 
 
 16
 Accordingly, we agree with the magistrate that defendants have not shown that they are entitled to qualified immunity as to any of the three search incidents. With the understanding that plaintiffs must still show by a preponderance of the evidence that the incidents occurred in the manner they allege, and that the issue of liability of individual defendants remains to be determined, the judgment of the United States Magistrate is affirmed.[4]
 
 
 
 [1]
 This defendant's name is also given as Shemelya, Shamais, and Shemalya
 
 
 [2]
 Special considerations involving automobiles have complicated that picture somewhat, but those considerations are not involved here
 
 
 [3]
 "Since the extent of the involvement, if any, of the defendants ... is unknown and since the question of damages, if any, remains open, trial must be had," Joint Appendix at 27 (emphasis added)
 
 
 [4]
 The sufficiency of plaintiffs' allegations of conspiracy was not raised in the District Court and is not before us